Judge Underwood
delivered the opinion of the Court
This controversy grows out of the following provision in Richard Tutt’s will. “My two negro men, John and James, 1 direct to be disposed of as follows: James to be set free according to the existing laws of the state, when he attains the age of SI, which will be in September, 1830.
*380 In the interim, his services by hire, &c. to be applied to the use of schooling and benefit of Abel Stewart’s children. The same in every principle res? pecting John, only that his age of 31, will not expire until the 4th of September, 1822, except, that he is to serve Thomas Tutt’s family until the time of his emancipation; but I do desire, he may not be hired out of Bourbon or Nicholas counties; my intention being, that their services during their servitude, be applied for the benefit of Stewart’s children.” The question is, whether Tutt’s children or Stewarts children are entitled to the hire of John accruing between the death of the testator, and the time when he was to be liberated. There is some difficulty in coming to a satisfactory conclusion, but viewing the case in its various aspects, we feel bound to give effect to the last expressed intention of the testator, which declares that their (meaning both slaves) hire shall be applied to the benefit of Stewart’s children. If Stewart’s children were not to receive the benefit of John’s hire, there was no necessity to conclude the devise respecting those slaves by such a declaration. The meaning of the will in regard to James, is striking and clear. The testator’s will, in regard to John, is the same, with one or two exceptions, at most. The exceptions are, he is not to be free until September, 1822, and he is to serve Thos. Tutt’s family. But how can he serve Thos. Tutt’s family and still let the hire be applied to the benefit of Stewart’s children? We think there is no irreconcilable conflict in those provisions. The testator says, he does not wish John hired out of Bourbon or Nicholas counties; this implies he may be hired out. The will does not show how his time is to be divided among the different members of Thos. Tutt’s family, nor does it declare, that Thos. Tutt’s family shall be entitled to the services of John withoutpayinghire therefor. The design of the testator may therefore have been, that John should be hired out in Bourbon or Nicholas, and that no one should hire or be permited to bid for him, unless he was a member of Thos. Tult’s family, thereby securing a home for John with a family in whose humanity and kindness to slaves he had confidence, intending at the same time, as he declares, that the amount of hire for his services should be applied *381 to the benefit of Stewards children. To this construction we are inclined. It does not appear in the record, where Thos. Tutt’s family were, at (he death of the testator, or the making of the will. There is, therefore, no extrinsic circumstance (even if such considerations were legitimate in a case like this) to make us doubt the propriety of the construction suggested.
Mills and Brown, for plaintiff; Reid, for defendants.
The complainants in the court below, if Thos. Tutt’s family was entitled to the hire of John, should have proved that they were his children. They did not. The fact was not admitted. Nor can it be presumed to be within the knowledge of Jones, the executor.
The decree is reversed with costs and the cause remanded with directions to dismiss the bill. (The Chief Justice dissents.)